**LJL TRANSPORTATION, INC., Louis P. Pektor, III, and Leo A. Decker, Appellant**

v.

**PILOT AIR FREIGHT CORPORATION, Appellee.**

Superior Court of Pennsylvania.

Argued March 8, 2006.

Filed July 17, 2006.

Reargument Denied Sept. 22, 2006.

Barry J. Cohen, Philadelphia, for appellants.

Daniel D. Haggerty, Philadelphia, for appellee.

BEFORE: JOYCE, LALLY–GREEN and KLEIN, JJ.

OPINION BY KLEIN, J.:

¶ 1 LJL Transportation, Inc. appeals from the trial court's order denying its motion for summary judgment and granting Defendant Pilot Air Freight Corporation's cross-motion for summary judgment. We affirm.[1]

¶ 2 At the outset we note that the following facts are not in dispute. Pilot is a freight forwarding company with numerous stations located throughout the United States. Many of the stations are not owned by Pilot, but by independent entities that have entered into a franchise agreement with Pilot. Prior to the instant dispute, LJL was one such franchisee. LJL owned and operated substations in

---

1. In reviewing an order granting or denying summary judgment, our scope of review is plenary. *Grandelli v. Methodist Hosp.*, 777 A.2d 1138, 1144 (Pa.Super.2001). We may disturb the trial court's decision only where it is established that the court committed an error of law or abused its discretion. *Id.*

Lehigh Valley and Harrisburg. Citing LJL's improper shipping of products through third-party entities (*i.e.*, other than Pilot) and LJL's failure to disclose such shipments and payments, Pilot cancelled the franchise of LJL.

¶ 3 LJL complained that it was not given an opportunity to cure its admitted breach of the agreement within 90 days as provided in the franchise agreement. Pilot countered that the *nature* of the breach—improperly running business from Pilot's customers through their own affiliated company and not through Pilot—destroyed the trust that Pilot needed to do business with them. Pilot asserted that there was no need to give LJL an opportunity to cure its breach since trust was vital and the loss of such impossible to cure. The parties filed cross-motions for summary judgment, as there were no disputed facts.

¶ 4 The trial court found that the actions of LJL "do warrant a high level of distrust in a business relation that requires trust." Trial Court Opinion, 12/9/03, at 10. Pilot depended on LJL to give it daily reports to know how much in royalties they were due. LJL nonetheless argues that the right to cure clause is absolute, and no matter what type of breach, they must be given an opportunity to cure, which here would be the payment of royalties on the shipments improperly diverted through an affiliated company. Although recognizing it as a case of first impression in Pennsylvania, in support of its ruling the trial court cited cases from other jurisdictions which hold that some types of dishonest conduct are so egregious and of such a nature that the aggrieved party may terminate the contract immediately even where a cure provision is specifically provided in the contract. *See, e.g., Southland Corp. v. Froelich,* 41 F.Supp.2d 227 (E.D.N.Y.1999) (franchisee's scheme to hide revenue from the franchisor irrevocably damaged the relationship of the parties permitting franchisor to terminate contract without opportunity to cure); *Larken, Inc. v. Larken Iowa City Ltd. Partnership,* 589 N.W.2d 700 (Iowa 1999) (hotel owner had right to terminate management agreement immediately despite notice and cure provisions, where manager engaged in self-dealings, which frustrated fundamental contract principles of fairness and honesty); *see also Leghorn v. Wieland,* 289 So.2d 745, 748 (Fla.Dist.Ct.App.1974) (actions of disloyalty and dishonesty make it impossible for defaulting party to remedy the breach; where a breach cannot be cured, "the giving of notice would be a useless gesture.")

■ ¶ 5 We agree with the above reasoning and hold that there are circumstances where the nature of the breach permits the aggrieved party to immediately terminate the contract despite a "cure" provision.

¶ 6 At this stage, LJL claims that the breach was not so substantial that it could not have been cured. LJL argues that while it routed $35,000 worth of business through their affiliated company to avoid reporting the revenue and paying royalties, it represents one-half (1/2) of one percent (1%) of total billings, resulting in only about $5,500 of lost revenue to Pilot, which is not incurable.

¶ 7 While it is possible that a trier of fact could find that the breach was not sufficiently egregious to warrant termination, assuming LJL paid the withheld royalties, this argument has been waived. LJL's only argument at the summary judgment stage was that no matter what the breach, Pilot was bound to give it 90 days to cure it. LJL did not raise the issue that the breach was not significant enough to justify termination in an answer to Pilot's cross claim for summary judg-

ment. Therefore, Pilot was not put on notice to defend against it. It is possible that Pilot could have discovered significantly more diversions than the $35,000, but there was no reason for them to pursue this issue since it was not properly raised.

¶ 8 Further this argument is not contained in LJL's Pa.R.A.P. 1925(b) statement, and it is also waived for that reason.

¶ 9 The sole argument made by LJL, that there is an absolute right to cure any default, was rejected by the trial court, has been rejected by every other state that has considered it, and we reject it as well.

¶ 10 Order affirmed.

¶ 11 LALLY–GREEN, J., concurs in the result.